ACCEPTED
09-17-00073-CV
NINTH COURT OF APPEALS
BEAUMONT, TEXAS
12/13/2017 9:35 AM
CAROL ANNE HARLEY
CLERK

NO. 09-17-00073-CV

IN THE
NINTH COURT OF APPEALS
AT BEAUMONT, TEXAS

FILED IN
9th COURT OF APPEALS
BEAUMONT, TEXAS
12/13/2017 9:35:42 AM
CAROL ANNE HARLEY
Clerk

GWENALYN WESTBROOK,
AS ADMINISTRATOR
OF THE ESTATE OF ERNEST WESTBROOK,
APPELLANT

vs.

HEIRS OF DAVID CROCKETT AND MARVIN WHITEHEAD,
APPELLEE

On Appeal in Cause No. 26673
1-A Judicial District Court
of Jasper County, Texas

## BRIEF FOR APPELLEE, MARVIN WHITEHEAD

Anne Pickle
SBN: 00791445
P. O. Box 894
Jasper, Texas 75951
Email: annepickle@att.net
(409) 382-8818

ATTORNEY FOR APPELLEE
MARVIN WHITEHEAD

ORAL ARGUMENT REQUESTED

## IDENTIFICATION OF THE PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel:

| | | |
|---|---|---|
| Gwenalyn Westbrook, as Administrator of the Estate of Ernest Westbrook | - | Appellant |
| Marvin Whitehead | - | Appellee |
| Jonathan L. Stovall<br>Galmor, Stovall Law Firm<br>SBN: 24058496<br>485 Milam Street<br>Beaumont, Texas 77701 | - | Appellant's Trial Counsel |
| Sean C. Villery-Samuel<br>Samuel & Son Law Firm, PLLC<br>SBN: 24070802<br>2636 McFaddin<br>Beaumont, Texas 77702 | - | Appellant's Counsel on Appeal |
| Joe Glenn Kahla<br>SBN: 24025944<br>MORIAN✳KAHLA<br>270 E. Lamar Street<br>Jasper, Texas 75951 | - | Appellee's Trial Counsel |
| Honorable Craig M. Mixson | - | Trial Judge |
| Anne Pickle<br>SBN: 00791445<br>P. O. Box 894<br>Jasper, Texas 75951 | - | Appellee's Counsel on Appeal |

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES ……………………………………… i

TABLE OF CONTENTS ……………………………………… ii

INDEX OF AUTHORITIES ……………………………………….. iii

STATEMENT OF THE CASE ……………………………………. 1

ISSUES PRESENTED ……………………………………….. 7 - 12

STATEMENT OF FACTS …………………………………….. 1 - 4

SUMMARY OF THE ARGUMENT ……………………………….. 4 - 6

ARGUMENT …………………………………………….. 6 - 12

CERTIFICATE OF COMPLIANCE …………………………….. 13

CERTIFICATE OF SERVICE ………………………………….. 13

# AUTHORITIES

## CASES

*Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986) ................................................ 5

*Dow Chemical Co. v. Francis*, 46 S.W. 3d 237, 21-242 (Tex. 2001) ........................... 7

*Cameron County v. Velasquez*, 668 S.W.2d 776 (Tex. App.—Corpus Christi, no pet) ............ 5

*Haile v. Holtzclaw*, 414 S.W.2d 916, 928 (Tex. 1967) ................................................ 5, 10

*Lassiter v. Bliss*, 559 S.W.2d 353 (Tex. 1977) ................................................ 5

*Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) ................................................ 5

*Nicol v. Gonzales*, 127 S.W. 3d, 390, 393 (Tex. App.—Dallas 2004, no pet.) ................... 9

*Preston Exploration Company L.P. v. G.S.F., L.L.C.*, 669 F.3d 518 (5th Cir. [Tex.] 2012) ...... 9

*Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267 (1961) ................................................ 10

## STATUTES

Texas Property Code, Sec. 5.02, Lexis 2017 ................................................ 5, 10

Tex. R. Civ. P. 94, Lexis, 2017 ................................................ 9

## Statement of the Case

Appellant, ("G. Westbrook") alleged two causes of action against Appellee ("Whitehead") in Plaintiff/Counter-Defendant's Second Supplemental Petition. In that document, the named Plaintiff is Gwenalynn Westbrook, Individually and on behalf of the Estate of Ernest Westbrook. The two causes of action alleged were (1) breach of contract for failure to pay the full purchase price for the property; and (2) fraud for making a representation of payment that Mr. Westbrook relied on. (C.R. 131-132). Those are the only two causes of action raised by Westbrook's pleadings against Whitehead.

The document attached at "tab 2" of Westbrook's brief and referenced therein as Westbrook's petition, is not a part of the appellate record. Moreover, Whitehead is not named as a defendant or a respondent in that document.

The case concluded with a bench trial on January 25, 2017 that involved only G. Westbrook and Mr. Whitehead. The Order of the Court states that "all remaining parties" appeared and announced ready. The Order further states that having considered the pleadings, the evidence, and the argument of counsel, judgment was rendered for Defendant.

Findings of Fact and Conclusions of Law were not requested or prepared.

The issues presented on appeal by G. Westbrook are not supported by her pleadings in the trial court.

## Statement of Facts

The first pleading in the appellate record naming Whitehead as a party is "Counter-Defendants' and Third-Party Plaintiffs' Original Counterclaim and Third-party claim." (C.R.34). In that document, Counter-Plaintiffs Carol Ann Westbrooks Curtis and Connie Sue Westbrooks alleged that Ernest Westbrook signed a deed to Whitehead, without authorization from other

1

alleged interest owners, and they requested a declaratory judgment setting aside the deed. They also alleged causes of action against Ernest Westbrook and Whitehead for conversion and conspiracy to convert and a request to quiet title. (C.R. 34-37). That pleading was filed February 23, 2009.

Earnest Westbrook died on March 9, 2010. (C.R. 61).

In March 2015, a document entitled "Plaintiff/Counter-Defendant's Second Supplemental Petition was filed by Gwenalyn Westbrook, individually and on behalf of the estate of Earnest Westbrook. In that document, Gwenalyn Westbrook alleged two causes of action against Marvin Whitehead. She alleged breach of contract for Whitehead's alleged failure to make all payments due under the contract, and alleged fraud on the part of Whitehead for making an alleged false representation to pay $125,000 for the purchase of the land the subject of the suit.

The case concluded with a bench trial on January 25, 2017 that involved only two parties, Gwenalyn Westbrook and Marvin Whitehead. The Order of the Court states that "all remaining parties" appeared and announced ready. The Order further states that having considered the pleadings, the evidence, and the argument of counsel, judgment was rendered for Defendant.

Two warranty deeds were admitted into evidence at trial. (R.R., Plaintiff's exhibits 2 and 3). The real property the subject of this case is conveyed to Whitehead in each document. In Plaintiff's exhibit 2, the named grantor is Earnest Westbrook. In Plaintiff's exhibit 3, the named grantors are Ernest Westbrook and wife, Gwenalyn Westbrook.

Parts of the deposition of Attorney Roy Harris were read into the record at trial.

Attorney Roy Harris, who was Mr. Westbrook's lawyer, testified that he prepared both deeds, and that the second one was prepared because, although he couldn't remember what it was, there was something about the first one he didn't like. Attorney Harris testified that he gave

2

the 2nd deed to Mrs. Westbrook and that she and her husband took it to a notary in Buna. (R.R. 84-85). Attorney Harris also testified that he knew the Whiteheads had made lots of cash payments to the Westbrooks, and that Mr. Whitehead had even paid the bill that the Westbrooks owed him. (R.R. 84-85). Harris testified that he didn't remember the exact purchase price, but he remembered it being about a thousand per acre. (R.R. 83).

Mrs. Westbrook testified that she was not aware of her husband having an agreement with Mr. Whitehead to sell the property to him. (R.R. 16). She also testified that the deeds were forgeries. (R.R. 27). Ms. Westbrook denied receiving payment for the land, but admitted to receiving two cash payments from Mr. Whitehead. She said they received $6,000 from Mr. Whitehead to repair their house after a storm, and another $5,000 payment. She had no earthly idea what the $5,000 cash payment was for. (R.R. 22, 23). G. Westbrook testified that she first learned of the deeds when she went to pay her taxes in 2009 or 2010. (R.R. 16, 26). She testified that the land was her husband's separate property. (R.R. 20).

Whitehead testified that he had an agreement with Mr. Westbrook to buy the property from him for $1,000.00 per acre, and that the payments were at least $1,000.00 per month. Whitehead testified he paid it off early. (R.R. 46). Mr. Whitehead further testified that he and Mr. Westbrook had known each other for many years and that it was common for them to make deals on a handshake. (R.R. 52, 53).

Whitehead produced a handwritten document dated July 20, 2007 which described the property and stated paid as agreed as to that date. Whitehead testified that the signatures on that document are his and Mr. and Mrs. Westbrook's. (R.R., Defendant's exhibit 1). Whitehead also produced a document that was a record of payments made to the Westbrooks by the Whiteheads. (RR, 53; Defendant's exhibit 2). Whitehead also produced copies of two cashier's checks

3

payable to Mr. Westbrook totaling $6,249.00. (R.R. Defendant's exhibits 3 and 4). Each of those payments is shown on the pay record admitted as Defendant's exhibit 2. Mr. Whitehead explained that the vast majority of the payments made to Mr. Westbrook were paid in cash. (R.R. 45). Mr. Whitehead also explained that it was Mr. Westbrook's attorney's decision to prepare a second deed. (R.R. 55).

Two notaries also testified. Deanna Glidden testified concerning Plaintiff's exhibit 2. Ms. Glidden testified that she was a notary in Buna at the time the deed was dated, and that it does have her signature on it. (R.R. 32-33). She further testified that she did not remember having met the Westbrook's in 2002 or 2004. According to her, there was an entry in her book involving Whitehead and Westbrook, but the entry was in 2005. (R.R. 35-36). She acknowledged, however, that she did notarize a deed involving Mr. Westbrook and Mr. Whitehead, and it was possible there was a mistake made in the entry of the date in her notary book. (R.R. 39).

Tammy Bush testified that she was a notary in 2005. She said that although she did not remember notarizing Plaintiff's exhibit 3, and there was no entry in her book, she did recognize her signature and her stamp on the document. She testified that because her signature and stamp were there, she believed that she did notarize the document. Ms. Bush explained that the date of the deed was several years prior, and that could have been the reason she didn't remember notarizing the document. With regard to the missing entry in the book, she explained that she did not always have her book with her when she notarized documents. (R.R. 75-81).

## Summary of Argument

In her pleadings, G. Westbrook did not allege any type of statute of frauds argument and/or forgery cause of action, and/or issues related to the execution of either deed. The issues

4

raised by Westbrook on appeal are, therefore, beyond the scope of her pleadings. Westbrook has not complained on appeal about the sufficiency of the evidence concerning the allegations that were made in her pleadings. Because the issues presented by Westbrook on appeal are beyond the scope of her pleadings in the trial court, they should be overruled.

If Westbrook's issues presented are considered by this court, however, issues no. one and two should be overruled because of her admission in her pleadings that a contract existed. In Plaintiff/Counter-Defendant's second supplemental petition, she alleged breach of contract, and fraud related to the contract. (C.R. 131). That is an admission that there was in fact a contract. Pleadings in a particular case, for the purpose of use in that case, constitute formal judicial admissions. *Cameron County v. Velasquez*, 668 S.W.2d 776 (Tex. App.—Corpus Christi, no pet). There was additional evidence of a contract as well, including various writings confirming that a contract existed. Moreover, there was ample evidence showing that Mr. Whitehead fully performed under the contract.

Issue No. three should also be overruled because Texas law does not require that the grantor appear before a notary to sign a deed. *Haile v. Holtzclaw*, 414 S.W.2d 916, 928 (Tex. 1967); Sec. 5.02, Texas Property Code.

Findings of fact and Conclusions of law were not requested or made. If findings have not been made or requested, the appellate court must affirm the judgment of the trial court on any legal theory that finds support in the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex. 1977). In the absence of findings, the trial court is presumed to have found the necessary facts in support of the judgment if there is any probative evidence to support the findings. See *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986).

5

The trial court rendered judgment in favor of Defendant. Westbrook's causes of action as stated in her pleadings did not find support in the evidence. The theories advanced by Westbrook on appeal are also not supported by the evidence.

G. Westbrook has not demonstrated that the evidence establishes, as a matter of law, all vital facts in support of the causes of action pleaded or the issues presented on appeal. Additionally, G. Westbrook has not demonstrated that the adverse findings are against the great weight and preponderance of the evidence.

The evidence supported a conclusion that Mr. Whitehead and Mr. Westbrook had an agreement for Mr. Whitehead to buy Mr. Westbrook's land for $1,000 per acre, or $125,000 total. There was documentary evidence showing the existence of the contract and full payment by Mr. Whitehead. Deeds that meet the requirements for an instrument of conveyance were admitted.

At trial, G. Westbrook denied the agreement to sell and denied having received payment for the property. As the sole judge of the credibility of the witnesses, the trial court had the discretion to believe Mr. Whitehead's testimony.

## Argument

A party who attacks the legal sufficiency of an adverse finding on an issue on which that party has the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. The point of error should be sustained only if the contrary

proposition is conclusively established. *Dow Chemical Co. v. Francis*, 46 S.W. 3d 237, 21-242 (Tex. 2001).

A party who attacks the factual sufficiency of an adverse finding on an issue on which that party has the burden of proof must demonstrate on appeal the adverse finding is against the great weight and preponderance of the evidence. The courts of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. In doing so, the court of appeals must determine the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *Dow Chemical Co. v. Francis*, 46 S.W. 3d 237, 21-242 (Tex. 2001).

Response to Issue No. One

In her pleadings, Westbrook made a judicial admission that there was a contract. (C.R. 131). It is improper for her to now argue on appeal that the evidence was legally and factually insufficient to support the finding of a contract, written or oral, when her stated cause of action at the trial court level was breach of contract.

If this court considers Westbrook's Issue No. 1, however, then Whitehead offers the following argument in support of the factual and legal sufficiency to support the finding of a contract, written or oral.

Attorney Roy Harris, who was Mr. Westbrook's lawyer, testified that he prepared both deeds, and that the second one was prepared because there was something about the first one he didn't like. Attorney Harris testified that he gave the 2nd deed to Mrs. Westbrook and that she and her husband took it to a notary in Buna. (R.R. 84-85). Attorney Harris also testified that Mr. Whitehead paid to him what the Westbrooks owed him, and also that he saw Whitehead give the

7

Westbrooks cash lots of times. (R.R. 84-85). Harris testified that he didn't remember the exact purchase price, but he remembered it being about a thousand per acre. (R.R. 83).

Whitehead testified that he had an agreement with Mr. Westbrook to buy the property from him for $1,000.00 per acre, and that the payments were at least $1,000.00 per month. Whitehead testified he paid it off early. (R.R. 46). Mr. Whitehead further testified that he and Mr. Westbrook had known each other for many years, and that it was common for them to make a decision on a handshake. (R.R. 51, 52).

Whitehead produced a handwritten document dated July 20, 2007 which described the property and stated paid as agreed as to that date. Whitehead testified that the signatures on that document are his and Mr. and Mrs. Westbrook's. (R.R., Defendant's exhibit 1) (R.R. 53). Whitehead also produced a document purporting to be a record of payments made to the Westbrooks by the Whiteheads. (RR, 53; Defendant's exhibit 2). Whitehead also produced copies of two cashier's checks payable to Mr. Westbrook totaling $6,249.00. (R.R. 55, Defendant's exhibits 3 and 4). Each of those payments is shown on the pay record admitted as Defendant's exhibit 2. Other payments are also shown totaling $125,685. The payment record also reflects the payments made to Roy Harris, the Westbrook's attorney, for sums the Westbrooks owed him. (R.R. Defendant's exhibit 2). The payment record is consistent with the testimony of both Mr. Whitehead and Mr. Harris concerning the purchase price, payments made towards the purchase price, and payments made towards Mr. Harris' fee.

Two warranty deeds were admitted into evidence at trial. (R.R., Plaintiff's exhibits 2 and 3). The real property the subject of this case is conveyed to Whitehead in each document. In Plaintiff's exhibit 2, the named grantor is Earnest Westbrook. In Plaintiff's exhibit 3, the named grantors are Ernest Westbrook and wife, Gwenalyn Westbrook.

8

Response to Issue No. Two

In her pleadings, Westbrook made a judicial admission that there was a contract. (C.R. 131). It is improper for her to now argue on appeal that the evidence was legally and factually insufficient to support the finding of a contract, written or oral, when her stated cause of action at the trial court level was breach of contract.

If this court considers Westbrook's Issue No. 2, however, then Whitehead offers the following argument in support of the factual and legal sufficiency to support the finding of a contract.

The statute of frauds was not pled by Westbrook. (C.R. 131). The statute of frauds must be pleaded affirmatively by a party who relies on it to avoid contractual liability. *Nicol v. Gonzales*, 127 S.W. 3d, 390, 393 (Tex. App.—Dallas 2004, no pet.); Tex. R. Civ. P. 94.

Even if the statute of frauds had been pled, it would have no effect. In addition to Plaintiff's judicial admission that there was a contract, there were also several documents admitted at trial that evidenced the existence of a contract. A valid and sufficient "writing" need not be a single, all inclusive document. *Preston Exploration Company L.P. v. G.S.F., L.L.C.*, 669 F.3d 518 (5th Cir. [Tex.] 2012). Whitehead produced a handwritten document dated July 20, 2007 which described the property and stated paid as agreed as to that date. Whitehead testified that the signatures on that document are his and Mr. and Mrs. Westbrook's. (R.R., Defendant's exhibit 1). Whitehead also produced a document purporting to be a record of payments made to the Westbrooks by the Whiteheads. (RR, 53; Defendant's exhibit 2). Whitehead also produced copies of two cashier's checks payable to Mr. Westbrook totaling $6,249.00. (R.R. Defendant's exhibits 3 and 4). Each of those payment is shown on the pay record admitted as Defendant's exhibit 2).

9

Two warranty deeds were admitted into evidence at trial. (R.R., Plaintiff's exhibits 2 and 3). The real property the subject of this case is conveyed to Whitehead in each document. In Plaintiff's exhibit 2, the named grantor is Earnest Westbrook. In Plaintiff's exhibit 3, the named grantors are Ernest Westbrook and wife, Gwenalyn Westbrook.

A party's complete performance of the party's obligations under a contract operates to take the contract outside of the application of the statute of frauds. *See Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267 (1961). In this case, Mr. Whitehead testified and had documentary evidence that he fully performed under the contract, and that the payments were accepted by the Westbrooks.

Response to Issue No. 3

Again, Westbrook has no pleadings calling into question the execution of the deeds admitted into evidence as Plaintiff's exhibits 2 and 3, so this issue is outside of the scope of what she can bring forward on appeal.

Subject to that objection, however, Whitehead makes this response to Westbrook's Issue No. 3. Section 5.02 of the Texas Property Code sets forth the requirements for an instrument of conveyance. "A conveyance of an estate of inheritance, a freehold, or an estate more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing. Tex. Prop. Code, sec. 5.02, Lexis, 2017. There is no requirement that the signature of the grantor be notarized. The statutory requirements as to acknowledgments are concerned only with the proof required for registration of a deed; an unacknowledged deed is nevertheless binding as between the parties when executed by the grantor. *Haile v. Holtzclaw*, 414 S.W.2d 916, 928 (Tex. 1967).

Westbrook's Issue # 3 should be overruled because whether the evidence is legally and factually sufficient to show that the Westbrooks appeared before a notary to sign either deed is of no consequence. The law does not require that the grantor appear before a notary to sign for an instrument of conveyance to be valid.

If further argument is necessary, Whitehead refers to the testimony of Roy Harris, the attorney for the Westbrooks, and to the testimony of the two notaries whose names appear on the deeds.

Deanna Glidden testified concerning Plaintiff's exhibit 2. Ms. Glidden testified that she was a notary in Buna at the time the deed was dated, and that it does have her signature on it. (R.R. 32-33). She further testified that she did not remember having met the Westbrook's in 2002 or 2004. According to her, there was an entry in her book involving Whitehead and Westbrook, but the entry was in 2005. (R.R. 35-36). She acknowledged, however, that she did notarize a deed involving Mr. Westbrook and Mr. Whitehead, and it was possible there was a mistake made in the entry of the date in her notary book. (R.R. 39).

Tammy Bush testified that she was a notary in 2005. She said that although she did not remember notarizing Plaintiff's exhibit 3, and there was no entry in her book, she did recognize her signature and her stamp on the document. She testified that because her signature and stamp were there, she believed that she did notarize the document. Ms. Bush explained that the date of the deed was several years prior, and that could have been the reason she didn't remember notarizing the document. With regard to the missing entry in the book, she explained that she did not always have her book with her when she notarized documents. (R.R. 75-81).

In summary, the issues presented on appeal by G. Westbrook are beyond the scope of her pleadings in the trial court, and are actually contradictory to her pleadings. The evidence was

11

nevertheless factually and legally sufficient to support the judgment for Whitehead. Because no findings of fact or conclusions of law were requested or made, the judgment should be affirmed if there is any legal theory that finds support in the evidence. The evidence supports the existence of an agreement by Mr. Westbrook and Mr. Whitehead that was fully performed by both parties. Mr. Whitehead paid for the property in full, and Mr. Westbrook conveyed the land to Mr. Whitehead.

WHEREFORE, PREMISES CONSIDERED, Appellee, Marvin Whitehead, prays that the trial court judgment be affirmed.

Respectfully submitted,

Anne Pickle
SBN: 00791445
P. O. Box 894
Jasper, Texas 75951
Email: annepickle@att.net
(409) 382-8818

By:_____

Anne Pickle
Attorney for Appellee, Marvin Whitehead

12

## Certificate of Compliance

I certify that this document was produced on a computer using Microsoft Word and contains 3,638 words, as determined by the software's word count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

_____
Anne Pickle

## Certificate of Service

This is to certify that a true and correct copy of the foregoing Brief of Appellee was served upon Sean C. Villery-Samuel via e-filing and certified mail this 13th day of December, 2018.

_____
Anne Pickle